

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-28-2005

# Sugiarto v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4138

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Sugiarto v. Atty Gen USA" (2005). *2005 Decisions.* Paper 322.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/322

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4138
_____

SUGIARTO,

Petitioner

v.

ALBERTO GONZALES, U.S. ATTORNEY GENERAL;
MICHAEL CHERTOFF, SECRETARY OF DHS;
MICHAEL GARCIA, SECRETARY FOR ICE,

Respondents
_____

On Petition for review of an Order of the Board of Immigration Appeals
INS Nos. A 79 727 786, A 79 727 789
_____

Submitted Under Third Circuit LAR 34.1(a) October 25, 2005

Before: SLOVITER, FISHER, and ROSENN, Circuit Judges.

(Filed October 28, 2005)
_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

　　Sugiarto,[1] a citizen of Indonesia, petitions for review of the determination of the

_____

[1]Petitioner has only one name.

Board of Immigration Appeals ("BIA") affirming the denial of Sugiarto's petition for withholding of removal and protection under the Convention Against Torture ("CAT"), and the dismissal of his petition for asylum for failure to file in a timely fashion.[2]  The BIA issued a *per curiam* order assuming the credibility of Sugiarto's testimony, but otherwise adopting and affirming the findings of the Immigration Judge ("IJ").  The IJ dismissed Sugiarto's asylum claim because it was not filed within one year of his arrival in the United States and did not qualify for any exception.  See 8 U.S.C. § 1158(a)(2). The IJ also determined that Sugiarto lacked credibility because of inconsistencies between his testimony and documents submitted by him, and because of his inability to recall important dates.

The IJ concluded that Sugiarto's lack of credibility cast sufficient doubt on his other claims for relief to deny them, but held in the alternative that even if his account were fully credited, Sugiarto had not met his burden of proof to establish a clear probability of persecution or torture if he was returned to Indonesia.  The IJ therefore held that Sugiarto was not entitled to withholding of removal under the Immigration and Nationality Act ("INA), 8 U.S.C. § 1231(b)(3), or relief under the CAT, see 8 C.F.R. § 1208.16(c).

The BIA affirmed the IJ's decision and held that the harm suffered by Sugiarto

---

[2]In dismissing Sugiarto's application for asylum, the IJ also denied that of Sugiarto's wife, a citizen of Indonesia who resides in the United States and was included in his asylum application.  See 8 C.F.R. § 208.3(a).

did not rise to the level of persecution. The BIA also extended Sugiarto's period for voluntary departure to 30 days from issuance of the decision.

Sugiarto timely appealed. He argues that the BIA should have overturned the IJ's adverse credibility findings because they were based on inconsistencies immaterial and irrelevant to the heart of his claim. He also challenges the IJ's conclusion that he was not subject to persecution on the ground that the IJ ignored the religious and ethnic nature of the attacks to which Sugiarto had been subject and failed to examine Sugiarto's claims in the context of the political situation in Indonesia. Sugiarto also argues that the IJ erred because he did not differentiate his claims for asylum and withholding of removal from his claim for relief under the CAT. See 8 C.F.R. § 1208.16(c). Sugiarto argues that he has proven a likelihood of torture, and that he should be protected under the CAT.

We deny the petition for review of the BIA order denying Sugiarto's claims for asylum, withholding of removal and relief under the CAT because the BIA's determinations that Sugiarto failed to establish a clear probability of persecution or a likelihood of torture are supported by substantial evidence on the record. We have jurisdiction under 8 U.S.C. § 1252.

I

Sugiarto, a 37-year-old man, entered the United States on December 28, 1999, on a non-immigrant B-2 visa that expired on June 27, 2000. He currently lives in Philadelphia with his wife and child and works in a warehouse in Bristol, Pennsylvania.

Removal proceedings were instituted against him in January of 2002. In response, Sugiarto filed an application for asylum to which he joined his wife. In the alternative, he requested withholding of removal and relief under the Convention Against Torture. After a hearing, the IJ denied relief from removal as to all grounds, but granted Sugiarto's request for voluntary departure.

Sugiarto's testimony and affidavit allege the following facts and circumstances forming the basis for his petition. He is ethnically Chinese and Christian, and like many such petitioners, he claims to have been subjected to harassment and criminal acts as a result of his ethnicity and religion. In April of 1999, Sugiarto was assaulted while riding his scooter home from an evening church service. A group of seven to ten apparently Muslim men stepped into his path along a small street and assaulted him, beating him severely with fists and rocks wrapped in cloth. The attack was precipitated when one of the men noticed his Bible hanging in a leather carrying case from the handlebars of his scooter. The men uttered racially pejorative terms during the attack and called Sugiarto an *infidel*. They threw his Bible to the ground and stomped on it. He was able to escape when some other scooter riders appeared in the street. The blows to Sugiarto's head caused headaches for a week and a cut to his forehead that left a scar. He also sustained bruising and swelling to his chest that made it difficult to breathe. He did not report this incident to the police because "he knew from experience that the police would not help in this kind of cases [sic]."

4

Sugiarto also claims to have been subject to harassment at the hands of Muslim colleagues while working from 1995 to 1999 as the sole Chinese, Christian employee at a rice wholesale firm in Indonesia run by a Muslim. His co-workers pressured him to convert to Islam after the 1998 riots, and complained to his boss that he was not working hard enough. They also frequently deflated the tires on his scooter to delay him when he had assignments involving travel. He was ultimately terminated for failing to meet his sales quotas, which he attributed to the time spent fixing his flat tires.

Sugiarto's wife, Nita Afandi, was a member of the Islamic faith until she converted to Christianity upon marrying Sugiarto. Their relationship angered Afandi's family, especially her Muslim stepfather, who Sugiarto claims attacked and beat him on three occasions. He also threatened to kill Sugiarto if he married Afandi. They married and had a child shortly after arriving in the United States. Sugiarto stated that Afandi's parents have since disowned her.

Sugiarto also submitted to the IJ copies of the State Department's 2001 and 2002 "Country Reports on Human Rights Practices" for Indonesia, and another State Department report entitled "International Religious Freedom Report" which appears to cover 2000 and 2001. These reports provide general information on the state of human rights and religious freedom and religious conflict in Indonesia.

First, the IJ noted that Sugiarto's application for asylum had not been filed within one year of his arrival in the United States and that he did not qualify for any of the

5

exceptions to the one-year deadline. See 8 U.S.C. § 1158(a)(2)(B), (D). Therefore, he dismissed Sugiarto's application for asylum.

Considering Sugiarto's claims for withholding of removal and relief under the CAT, the IJ made several adverse credibility findings. The IJ noted that Sugiarto had been impeached "almost constantly" throughout his testimony, citing inconsistencies in his reporting of his dates of employment in Indonesia and the name of his employer, whether co-workers at the rice wholesaler punctured his tires or simply let the air out of them, the year that riots took place in Java, and the omission from his asylum application of his employment buying and selling motorcyles. The IJ noted that "[t]he credibility of the respondent is of extreme importance in assessing his claims." He therefore denied Sugiarto's claim for withholding of removal.

The IJ also held that "[a]ssuming arguendo that I had found the respondent credible," he would have denied Sugiarto's applications for asylum and for withholding because he had failed to present "a scintilla of evidence that he has ever been persecuted nor that he has a well-founded fear of persecution if he returns to Indonesia, much less, that it is more likely than not that he would be persecuted." The IJ found that the attack on Sugiarto in April of 1999 was perpetrated by "street thugs, hoodlums," and was not based on one of the five grounds protected under the withholding of removal statute. 8 U.S.C. § 1231(b)(3)(A) (requiring an applicant for withholding of removal to demonstrate that "his life or freedom would be threatened . . . because of [his] race, religion,

6

nationality, membership in a particular social group, or political opinion"). The IJ characterized as "childish pranks" the harassment to which he was subject at work by his Muslim colleagues, and found that it did not amount to persecution and that Sugiarto had not lost his job due to animus, but because he had failed to meet his sales quotas. Although the attacks and threats perpetrated by his Muslim father-in-law were based on bias, they did not amount to persecution either. Therefore, the IJ concluded that if he were to credit Sugiarto's account, he would still find that he was not entitled to withholding of removal or relief under the CAT. The IJ found, however, that Sugiarto had not submitted a frivolous application for asylum and therefore granted his request for voluntary departure.

The BIA affirmed in a memorandum opinion adopting the IJ's decision, and restating its opinion that "the incidents of harm which [Sugiarto] claims to have suffered in Indonesia do not amount to persecution on account of nationality, religion, or any other statutory basis for withholding of removal." The BIA also noted that "the background evidence of conditions in Indonesia fails to establish that [Sugiarto and his wife] would face a clear probability of persecution or torture upon returning to their country."

On review, Sugiarto challenges the adverse credibility findings, arguing that they were based on isolated and immaterial inconsistencies in his testimony. He also argues that the BIA failed to apply the appropriate standard of review to the IJ's credibility findings. He asserts that the IJ erred in concluding that he had not established eligibility

for withholding of removal because he failed to consider Sugiarto's claims in the political and social context of Indonesia. He argues that the IJ should have made a determination as to whether there is a "pattern or practice of discrimination against ethnic Chinese Christians in Indonesia," as demonstrated by background materials submitted by Sugiarto.

Sugiarto further argues that the IJ should have distinguished his claim for relief under the CAT from his claim for withholding of removal because "[t]he determination that there is no basis for withholding/asylum does not necessarily mean the person is ineligible for a claim under CAT." Protection under the CAT, Sugiarto argues, does not require that the torture be motivated by a statutorily protected ground, and therefore, he is entitled to relief under the CAT because he has proven torture.

## II

An alien must file an application for asylum within one year of arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). If he fails to file, he must demonstrate either "the existence of changed circumstances which materially affect [his] eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D). The IJ dismissed Sugiarto's asylum claim because it was not filed within one year of his arrival in the United States and did not qualify for any exception, and the BIA agreed. See id. § 1158(a)(2). Sugiarto argued in his notice of appeal that extraordinary circumstances prevented timely filing, but failed to elaborate upon this in his brief. We do not have jurisdiction to review a determination of the BIA

that an asylum application was not filed in a timely fashion. 8 U.S.C. § 1158(a)(3);

Tarrawally v. Ashcroft, 338 F.3d 180, 185–186 (3d Cir. 2003).

An application for withholding of removal is substantively similar to an asylum

claim, except that it requires a higher showing on the part of the applicant. To qualify for

withholding of removal, an alien must show a clear probability that, on return to his home

country, his life or freedom would be threatened on the basis of his race, religion,

nationality, membership in a particular social group, or political opinion. See 8 U.S.C. §

1231(b)(3)(A); Wang v. Gonzales, 405 F.3d 134, 139 (3d Cir. 2005). The alien may

satisfy this standard in various ways, for example, by showing that he suffered

persecution in the past, 8 C.F.R. § 1208.16(b)(1), or by showing that it is more likely than

not that he would be persecuted in the future, 8 C.F.R. § 1208.16(b)(2).

Under the implementing regulations, withholding of removal under the CAT

requires an alien to show that it is "more likely than not" that he will be tortured if

returned to his country.[3] 8 C.F.R. § 1208.16(c)(2); Berishaj v. Ashcroft, 378 F.3d 314,

---

[3]Article 3 of the Convention Against Torture prevents a court from returning an alien to a country "where there are substantial grounds for believing that he would be in danger of being subjected to torture." 1984 United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G. A. Res. 39/46, U. N. GAOR, 39th Sess. Supp. No. 51, at 197, U. N. Doc. A/39/51 (1984) ("CAT"). Article I of the CAT defines torture as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. It does not include pain or

332 (3d Cir. 2004). A CAT claim requires an alien to establish by objective evidence that he is likely to be tortured in the future. Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003).

In this case, the BIA issued an order expressly adopting the IJ's decision, indicating its agreement with the conclusions contained in that decision. In re Burbano, 20 I&N Dec. 872, 874 (BIA 1996); Paripovic v. Gonzales, 418 F.3d 240, 244 n.4 (3d Cir. 2005). The BIA also agreed with the IJ that Sugiarto had failed to establish eligibility for withholding of removal or relief under the CAT. These are factual determinations, which we review to determine whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacharias, 502 U.S. 478, 481 (1992); Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005). Substantial evidence review is deferential, and we regard the BIA's factual determinations as conclusive because we perceive no facts in this case that compel us to conclude to the contrary. See 8 U.S.C. § 1252(b)(4)(B); INS v. Elias-Zacharias, 502 U.S. 478, 481 (1992).

III

We do not deem it necessary to consider whether the IJ's adverse credibility determinations were supported by substantial evidence or whether the BIA applied the appropriate standard of review to those determinations. Both the IJ and the BIA

---

suffering arising only from, inherent in or incidental to lawful sanctions." Id.; see also 8 C.F.R. § 1208.18(a) (incorporating and elaborating on this definition of torture).

emphasized that even if Sugiarto's testimony were fully credited, he had failed to meet the required showing for withholding of removal or relief under the CAT. We have, therefore, reviewed the conclusions of the BIA and we conclude that they are supported by substantial evidence on the record.

The BIA did not err in concluding that Sugiarto failed to meet his burden to establish by a clear probability that, on return to his home country, his life or freedom would be threatened on the basis of his race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1231(b)(3)(A). We agree with the BIA and the IJ that the incidents of harm which Sugiarto suffered did not amount to persecution. These conclusions are based on substantial evidence and a reasonable person would not be compelled by this record to conclude to the contrary. 8 U.S.C. § 1252(b)(4)(B); INS v. Elias-Zacharias, 502 U.S. 478, 481 (1992).

Persecution includes threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom. Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001). We agree with the IJ and the BIA that the assault in 1999 and the harassment at work did not rise to the level of persecution. As the IJ noted, Sugiarto has managed to carry on a relationship with and ultimately marry his wife despite her father's threats, and there is no indication that those threats were credible or that the police in Indonesia would be unwilling or unable to deal with his father-in-law appropriately.

11

The BIA also did not err in affirming the IJ's determination that Sugiarto was not entitled to relief under the CAT because Sugiarto failed to carry his burden of demonstrating that it was more likely than not that he would be tortured if removed to Indonesia. Sugiarto rightly argues that a determination that an alien is not eligible for withholding of removal does not resolve the issue of whether the alien is eligible for relief under the CAT. But in this case, the IJ's summary analysis and dismissal of Sugiarto's CAT claim is consonant with Sugiarto's failure to meet his burden of proof. Sugiarto established that he was the victim of several criminal assaults. He did not even bother to allege the involvement or acquiescence of state actors in these assaults, as required by the CAT, which provides for withholding of removal when torture "is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." CAT, Art. I; 8 C.F.R. § 1208.18(a)(1). The BIA did not err in concluding that "the background evidence of conditions in Indonesia fails to establish that the respondents would face a clear probability of persecution or torture upon returning to their country."

IV

For the foregoing reasons, we see no error in the decision of the BIA or the IJ. Accordingly, the petition for review is denied.