# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3514

_____

Jerry Tolego,                                        *
                                                     *
                    Petitioner,                      *
                                                     *    Petition for Review of an Order of
        v.                                           *    the Board of Immigration Appeals.
                                                     *
Alberto Gonzales, Attorney General of                *
the United States of America,                        *
                                                     *
                    Respondent.                      *

_____

Submitted: June 15, 2006
Filed: June 26, 2006

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Jerry Tolego, a native citizen of Indonesia, entered the United States illegally in December 2000. He filed for asylum on March 18, 2003, claiming that he had suffered past persecution on account of his ethnicity and religion and that he feared future persecution and torture if returned. The immigration judge (IJ) found his asylum claim time barred and denied his requests for withholding of removal and protection under the Convention Against Torture. Tolego appealed that decision to the Board of Immigration Appeals (BIA) which affirmed, and Tolego now petitions this court for review. We deny the petition.

Tolego is ethnic Chinese but was born in Indonesia. He is also a practicing evangelical Christian, and his Indonesian identity card identifies him as Christian. He applied for a non-immigrant visa in December 1999 and again in August 2000, but both applications were denied. He entered the United States in December 2000 with a false passport, and on March 18, 2003 he filed an application for asylum, withholding of removal, and protection under the Convention Against Torture, alleging that he had been persecuted in Indonesia because he was a Chinese Christian. The government began removal proceedings on July 23, 2003, and a hearing was held shortly thereafter. The testimony of Tolego and the numerous exhibits filed with the IJ provide the factual background for his claim.

Tolego lived in Bekasi, Indonesia from 1991 until his illegal entry into the United States. In Indonesia he worked as a salesman and took trips to different parts of the country on account of his employment. In July 1996 Tolego was driving in Jakarta in front of the Christian University when his car was stopped by a group of thirty to forty people who asked him whether he was Chinese or Christian. He gave no reply and was subsequently punched in the face. He sought treatment for this injury at home for he feared that he would not be safe at the hospital. He also did not report the incident to the police since they had failed to investigate such incidents in the past. Tolego admitted that this was the only physical harm he suffered while in Indonesia and that he had made additional trips to Jakarta after the 1996 incident. While he lived in Bekasi, Tolego belonged to the Rengasdenkloak Pentecostal Church, an evangelical Christian church. In 1997 his pastor Reinhard Lakawa told him not to go to the church because Muslims had burned it, as well as nearby Chinese owned businesses. The Indonesian government rebuilt the church within six months, and a police station is now located nearby.

The pastor and associate pastor of the church Tolego attends in Minneapolis supported his asylum application. Pastor Dan Peterson submitted a letter which spoke generally about the persecution of Christians in Indonesia and more specifically stated

that Chinese Christians are the most threatened group and that attacks on Christian churches have increased from year to year. Associate pastor Erik Ekel submitted a similar letter, and a 2003 International Christian Concern Country Profile indicated that Indonesia is 88% Muslim and 8% Christian with tension between these groups throughout the country. On the other hand, the State Department 2003 Country Report stated that relations between Muslims and Christians have improved and noted that the groups have worked together to rebuild many of the burned churches and to protect them from future violence. Although a State Department travel warning in the same year described hostilities that had broken out between the Indonesian military and an armed militia, the Free Aceh Movement (GAM), the 2003 Country Report concluded that this conflict "has little to do with religion, and much to do with economic and historical grievances." Finally, the 2004 Country Report documented the decline in the number of church burnings from twenty to seven.

Tolego has no family in the United States. His parents are also practicing Christians and have lived in Indonesia their entire lives, as have his two brothers Rafli and Yopi. Tolego received a letter from Rafli in January 2004, which complained that Muslims constantly terrorized and intimidated Chinese Christians and that he had to move around in the region continuously to avoid harm. When Tolego was asked if any of his family had been physically harmed, he answered not that he had heard.

The IJ denied Tolego's application on October 18, 2004. He found Tolego's asylum claim time barred because it had not been filed within one year after entry into the United States as required by statute. The IJ also denied withholding of removal after finding that although Tolego was credible, he had not shown a clear probability of persecution if returned to Indonesia. Tolego's request for protection under the Convention Against Torture was denied because the IJ found no evidence that the Indonesian government had committed or acquiesced in the commission of torture. The BIA affirmed the IJ's decision on August 17, 2005, and Tolego petitions for

review.  Tolego complains that the IJ erred in denying his asylum claim and argues that he suffered past persecution and maintains a reasonable fear of future persecution.

An application for asylum must be filed within one year of an alien's entry into the United States. 8 U.S.C. § 1158(a)(2)(B).  Not withstanding this time limit, an alien may file an asylum application if he demonstrates to the satisfaction of the Attorney General that there are changed circumstances which materially affect his eligibility for asylum or extraordinary circumstances relating to delay in filing his asylum application. 8 U.S.C. § 1158(a)(2)(D).  It is undisputed that Tolego filed his application well after the one year period had expired and that his attempt to be excused from the requirement based on changed circumstances was denied.  Under our case law this court lacks jurisdiction to review either the IJ's determination that the asylum application was not timely filed or the Attorney General's decision rejecting the applicant's complaint of changed circumstances. Ming Ming Wijono v. Gonzales, 439 F.3d 868, 871 (8th Cir. 2006).

Tolego next complains that the IJ erred in denying him withholding of removal under 8 U.S.C. § 1231(b)(3).  We review the IJ's factual findings under the substantial evidence standard and will affirm unless the record evidence is "so compelling that no reasonable factfinder" could fail to find for Tolego. Ibrahim v. Gonzales, 434 F.3d 1074, 1078 (8th Cir. 2006).  To be eligible for withholding of removal, Tolego must demonstrate that there is a "clear probability" that his life or freedom will be threatened on account of the protected ground of ethnicity or religion if he were returned to Indonesia. INS v. Stevic, 467 U.S. 407, 430 (1984).  Tolego claims past persecution and the fear of it in the future.  Persecution includes the infliction or threat of death, torture, or the like on account of one's race, religion, nationality, membership in a particular social group, or political opinion. Ngure v. Ashcroft, 367 F.3d 975, 989-90 (8th Cir. 2004).  The only evidence of actual harm to Tolego was the 1996 incident when he was punched in the face while in his car.  He did not suffer serious

medical injuries, and this event alone cannot be considered past persecution. See Sugiarto v. Gonzales, 153 Fed. Appx. 104, 110 (3d Cir. 2005) (assault on Indonesian male in similar circumstance was not persecution).

Tolego responds that the record demonstrates a pattern or practice of persecution against Chinese Christians and that he is a member of that group, and therefore entitled to withholding of removal. 8 C.F.R. § 208.16(b)(2)(i)-(ii). To constitute a "pattern or practice," the persecution of the group must be "systemic, pervasive, or organized." Ngure, 367 F.3d at 991. The State Department Country Reports in 2003 and 2004 show that violence against Chinese Christians has declined and cooperation between the groups has increased. Moreover, nothing in the record demonstrates that government officials engaged or acquiesced in a pattern or practice of persecuting Chinese Christians as a group. Ngure, 367 F.3d at 992; Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005). To the contrary, the record shows that the government helped rebuild his church after the 1997 attack and increased security in the area to prevent future violence.

Tolego's application for protection under Article 3 of the Convention Against Torture suffers from similar deficiencies. Torture requires the infliction of severe pain or suffering, by or with the acquiescence of a public official. Wijono, 439 F.3d at 874. Tolego has not shown that any of the acts he complained about were committed by, at the direction of, or with the acquiescence of public officials. He has failed to demonstrate that the evidence in the record is "so compelling that a reasonable factfinder must have found (him) entitled to relief under the Convention." Ngure, 367 F.3d at 992.

For these reasons, we deny the petition for review.

_____