# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1154

_____

| | | |
|---|---|---|
| Okechukwu Damian Ejimadu, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of a Final |
| v. | * | Decision of the Board of |
| | * | Immigration Appeals. |
| Alberto Gonzales, Attorney General | * | |
| of the United States of America, | * | [UNPUBLISHED] |
| | * | |
| Respondent. | * | |

_____

Submitted: February 15, 2007
Filed: February 26, 2007

_____

Before WOLLMAN, BYE, and SMITH, Circuit Judges.

_____

PER CURIAM.

Okechukwa Ejimadu, a native and citizen of Nigeria, petitions for review of an order of the Board of Immigration Appeals (BIA), which adopted and affirmed the decision of the immigration judge (IJ), denying Ejimadu's requests for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). Having carefully reviewed the record, we deny the petition.

Ejimadu entered the United States on or about September 1, 1998, as a non-immigrant visitor and remained longer than authorized. Removal proceedings were commenced on December 9, 2003, and Ejimadu was charged with being removable

for having remained in the United States beyond the authorized period. In January 2004, Ejimadu conceded removability, and in March 2004, he applied for asylum, withholding of removal, and CAT relief, alleging that if returned to Nigeria, he would be persecuted or tortured for his past violations of "Sharia" law and because of his Christian religion.

Ejimadu, who is from Imo, in southeast Nigeria, alleged that, in 1991 when he was attending a university in Kaduna (a Muslim-majority state in northern Nigeria) he and his Muslim girlfriend drank alcoholic beverages in Ejimadu's apartment in front of Muslim guests. According to Ejimadu, the Muslim guests were offended by both the consumption of alcohol and his relationship, as a Christian, with a Muslim woman, which were violations of "Sharia," which Ejimadu explained was the strict way of life followed by Muslims. Ejimadu alleged that one or more of the guests reported his conduct to individuals who Ejimadu identified as enforcers of Sharia law. Ejimadu heard that the Sharia enforcers were going to take action against him so he fled Kaduna and went back to his family region in Imo. From 1991 until he entered the United States, Ejimadu continued to live in Imo without ever being arrested by or suffering any harm from the Sharia enforcers.

The IJ denied Ejimadu asylum because his application was untimely and denied him withholding of removal and CAT relief because he had not shown it was more likely than not he would be persecuted or tortured in Nigeria. Ejimadu appealed to the BIA. The BIA adopted and affirmed the IJ's decision, noting that the IJ "properly found that [Ejimadu was] ineligible for asylum . . . as a result of his failure to file his asylum application within one year of the date of his arrival in the United States or to establish either changed or extraordinary circumstances sufficient to excuse the delay in filing." Furthermore, the BIA agreed with the IJ's conclusion that Ejimadu "failed to meet his burden of proof for withholding of removal . . . and protection under the Convention Against Torture." The BIA then dismissed Ejimadu's appeal.

Ejimadu again appeals, claiming that his asylum claim should not have been dismissed for failure to file within the one-year period. Ejimadu also asserts that his other claims for relief were dismissed based upon his failure to seek asylum within the one year period required by law, even though withholding of removal and CAT relief claims are not subject to the one-year period.

Initially, we hold that we lack jurisdiction to review the IJ's determination that Ejimadu's asylum application was barred as untimely. *See* 8 U.S.C.§ 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under [8 U.S.C. § 1158(a)(2)(B)]"); *Tolego v. Gonzales*, 452 F.3d 763, 766 (8th Cir. 2006) ("[T]his court lacks jurisdiction to review either the IJ's determination that the asylum application was not timely filed or the Attorney General's decision rejecting the applicant's complaint of changed circumstances"); *Ngure v. Ashcroft*, 367 F.3d 975, 988–89 (8th Cir. 2004) (stating that judicial review of finding that alien did not show changed or extraordinary circumstances relating to the delay in filing asylum application is precluded).

Additionally, after carefully reviewing the record, we conclude that Ejimadu's withholding of removal and CAT relief claims were dismissed on the merits, and that substantial evidence supports the denial of withholding of removal and denial of CAT relief. *See Ming Ming Wijono v. Gonzales*, 439 F.3d 868, 870, 872 (8th Cir. 2006) (stating the standard of review). The IJ determined that Ejimadu's Sharia-based claims were implausible, as there was "no evidence that [Ejimadu] would have to fear being targeted by the Sharia courts in Nigeria at this time," and there was "insufficient evidence in the record to make a finding that [Ejimadu] would have fears of marauding Sharia court enforcers coming to his area of Nigeria to track him down for" the 1991 incident. Furthermore, Ejimadu's own testimony showed that he was never subjected to any persecution or torture by the Sharia enforcers in the seven years he remained in Nigeria following the 1991 incident.[1]

---

[1]Although Ejimadu claims he was in hiding during this time, he acknowledged that he attended law school at a state university in Imo for five years during this time.

Moreover, Ejimadu traveled outside of Nigeria twice between 1991 and 1998, both times voluntarily returning to Nigeria. Neither time was Ejimadu subjected to persecution or harassment of any kind when he reentered Nigeria at the airport in Lagos, despite his claims that the Sharia-supporting customs or immigration officials working at the airport would immediately take him into custody if he was returned to Nigeria.

With respect to Ejimadu's claims that he would be subjected to persecution or torture because of his Christianity, the evidence presented showed that 40% of Nigeria was Christian, while the southeastern region, including Ejimadu's homeland of Imo, is predominantly Christian. Further, Ejimadu's testimony showed that neither he nor any of his family members, who are Christian, had been subjected to such persecution based on their religious beliefs.

Because Ejimadu's claims contained a "large number of serious implausibilities," the IJ "seriously question[ed]" Ejimadu's credibility. These credibility findings are entitled to deference, as they were supported by specific, cogent reasons. *Ibrahim v. Gonzales*, 434 F.3d 1074, 1078–79 (8th Cir. 2006); *Sheikh v. Gonzales*, 427 F.3d 1077, 1081 (8th Cir. 2005) (stating that adverse credibility determination as to core of persecution testimony is dispositive of withholding of removal claim); *Yang v. United States Dep't of Justice*, 426 F.3d 520, 521–23 (2d Cir. 2005) (upholding denial of CAT relief based on adverse credibility determination with respect to specific fact upon which CAT claim was premised).

Accordingly, we deny the petition.

_____