[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 5, 2010
JOHN LEY
CLERK

No. 10-10412
Non-Argument Calendar
_____

Agency No. A088-097-348

JOSE GREGORIO MANZELLA-OLIVEROS,
SADIE MABEL MADURO DE MANZELLA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 5, 2010)

Before HULL, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

Jose Gregorio Manzella-Oliveros and his wife, Sadie Mabel Maduro de Manzella, both natives and citizens of Venezuela, petition for review of the final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of Manzella-Oliveros's application for asylum under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a), withholding of removal, 8 U.S.C. § 1231(b)(3), and withholding of removal under the United Nations Convention Against Torture ("CAT"), 8 C.F.R. § 208.16(c). Manzella-Oliveros argues on appeal that: (1) the BIA and the IJ erred in denying him withholding of removal because the IJ erred by concluding that he had not established the required nexus between his individualized fear of persecution and his political opinion, it is more likely than not that he will be persecuted as a result of being deported from the United States, he established that he was a member of a protected group of individuals who had been subject to a pattern or practice of persecution by Chavez's government; and (2) the BIA and the IJ erred in finding that he did not establish that he was eligible for withholding of removal under CAT since his credible testimony and supporting documentary evidence were sufficient to establish that it was more

2

likely than not that he would suffer torture at the hands of the Venezuelan government or with its acquiescence. After thorough review, we deny the petition.[1]

We review the decision of the BIA, and, to the extent the BIA expressly adopts the opinion of the IJ, we will also review the adopted portion of the IJ's opinion. Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009). Here, although the BIA issued its own opinion, it expressly agreed with the IJ's determinations and adopted the IJ's reasoning. Therefore, we will review the decisions of both the BIA and the IJ.

---

[1] As an initial matter, we deny Maduro de Manzella's petition for review because she was a derivative of Manzella-Oliveros's application. While the asylum statute explicitly creates derivative rights for a petitioner's spouse, 8 U.S.C. § 1158(b)(3)(A), we have held that there are no derivative benefits associated with a grant of withholding of removal because, unlike the asylum statute, the withholding statute does not mention derivative rights. Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007). We have not yet made a similar holding in a published opinion with respect to derivative benefits under CAT, but the CAT regulation also does not mention derivative rights, signifying that a derivative claim is likewise foreclosed under CAT. 8 C.F.R. § 208.16(c)(2), (4); see also Oforji v. Ashcroft, 354 F.3d 609, 615 (7th Cir. 2003) (Seventh Circuit case holding that the CAT regulation "seemingly forecloses" a derivative claim).

In this petition, Manzella-Oliveros abandoned any argument regarding his application for asylum because he did not argue it on appeal. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). Moreover, even if he had preserved this argument, we lack jurisdiction to consider the BIA's determination that the application was untimely. See 8 U.S.C. § 1158(a)(3) (precluding this Court from reviewing the BIA's determination that an asylum application is time-barred); Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1231 (11th Cir. 2007). Therefore, only Manzella-Oliveros's claims for withholding of removal and CAT relief are before us, and the statutes and regulations covering withholding of removal and CAT relief do not confer derivative benefits on an applicant's spouse.

3

We review de novo the BIA's conclusions of law, but we review factual findings under the substantial evidence test. Id. We review the BIA's interpretation of the applicable statutes de novo, but we defer to the BIA's interpretation if it is reasonable. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Our review for substantial evidence is highly deferential. Kazemzadeh, 577 F.3d at 1351. When conducting that review, we "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision," and will reverse findings of fact made by the BIA or the IJ only when the record compels a reversal. Id. (quotation omitted). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. (quotation omitted).

First, we reject Manzella-Oliveros's claim that the BIA and IJ erred in denying him withholding of removal. An individual may qualify for withholding of removal to a particular country if he demonstrates that his "life or freedom would be threatened in that country" on account of, among other protected grounds, his political opinion. 8 U.S.C. § 1231(b)(3)(A). An applicant may also demonstrate his eligibility based on "a theory of imputed political opinion if he shows that the persecutor falsely attributed an opinion to him, and then persecuted him because of that mistaken belief about his views." Al Najjar, 257 F.3d at 1289 (quotations and

4

alterations omitted). "The alien bears the burden of demonstrating that it is more likely than not [that he] will be persecuted or tortured upon being returned to [his] country." Sepulveda, 401 F.3d at 1232 (quotation omitted). If an applicant for withholding of removal is found to have suffered past persecution in the proposed country of removal on account of a protected ground, it is presumed that his life or freedom would be threatened in the future. 8 C.F.R. § 1208.16(b)(1).

An applicant who has not suffered past persecution may demonstrate that his life or freedom would be threatened in a country if he can establish that it is more likely than not that he would be persecuted in that country on account of a protected ground. 8 C.F.R. § 1208.16(b)(2). The threat to life or freedom requirement may be met by showing either (1) that he would likely be singled out individually for persecution on account of a protected ground if returned to the country of removal, or (2) that there is a pattern or practice of persecution of a group of persons similarly situated to him on account of a protected ground, and that he is included in, or identified with, the persecuted group such that it is more likely than not that his life or freedom would be threatened if he returned. Id.

We have noted that "[n]ot all exceptional treatment is persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000). We explained that persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment

5

or intimidation, and that mere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231 (quotations and alteration omitted). When assessing whether a petitioner has established past persecution, we consider the cumulative impact of the mistreatment he suffered. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1258 (11th Cir. 2007).

We have held that "employment discrimination which stops short of depriving an individual of a means of earning a living does not constitute persecution." Barreto-Claro v. U.S. Att'y Gen., 275 F.3d 1334, 1340 (11th Cir. 2001) (holding that although petitioner suffered employment discrimination, lost his job as a taxi driver, and was forced to take menial work, he was not persecuted). Therefore, a petitioner's termination from his employment and later inability to find a job is insufficient to compel a finding of persecution. See Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1291 (11th Cir. 2006) (concluding that petitioner's job termination did not rise to the level of persecution where petitioner failed to show how long he searched for a replacement job in the same city and provided no evidence demonstrating that he sought employment after relocating to another city, such that he failed to show that "he was deprived of all means of earning a living").

Because Congress has not defined what constitutes a pattern or practice of persecution, we will defer to the BIA's definition of this term as long as it is not

unreasonable, i.e., arbitrary, capricious, or clearly contrary to law. See Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1196 (11th Cir. 2006) (deferring to the BIA's definition of what constitutes a "particular social group"); see also Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). The BIA has defined a pattern or practice of persecution as persecution of a group that is both "systemic and pervasive." In re A-M-, 23 I. & N. Dec. 737, 741 (BIA 2005) (citing Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005)).[2] When considering whether the applicant has established a pattern or practice of persecution in his home country, the BIA is entitled to "rely heavily on" the State Department's country reports. Kazemzadeh, 577 F.3d at 1354 (quotation omitted).

In this case, the record does not compel the conclusion that Manzella-Oliveros is eligible for withholding of removal. Any economic hardship he may have suffered before leaving Venezuela was not sufficiently severe to amount to persecution. He also has not shown that he would be individually targeted for persecution based on

---

[2] In addition to the Third Circuit, the First, Seventh, Eighth, Ninth, and Tenth Circuits have all applied the same "systemic and pervasive" test to determine whether a pattern or practice of persecution exits. See, e.g., Sugiarto v. Holder, 586 F.3d 90, 97 (1st Cir. 2009); Raghunathan v. Holder, 604 F.3d 371, 377 (7th Cir. 2010); Tolego v. Gonzales, 452 F.3d 763, 766 (8th Cir. 2006); Wakkary v. Holder, 558 F.3d 1049, 1061 (9th Cir. 2009); Woldemeskel v. INS, 257 F.3d 1185, 1191 (10th Cir. 2001). Moreover, although the Second Circuit did seek clarification as to how the standard might be reliably applied in "particular instances," it noted that the standard appeared to be reasonable. Mufied v. Mukasey, 508 F.3d 88, 92-93 (2d Cir. 2007).

his political opinion. Further, because it does not appear that the "systemic and pervasive" standard announced by the BIA in In re A-M- is unreasonable, we will apply it when evaluating whether Manzella-Oliveros established a pattern or practice of persecution in Venezuela. However, Manzella-Oliveros did not establish that the persecution of Venezuelan President Hugo Chavez's detractors was sufficiently systemic and pervasive to establish a pattern or practice of persecution.

We also find no merit in Manzella-Oliveros's claim that the BIA and the IJ erred in finding that he did not establish that he was eligible for withholding of removal under CAT. To qualify for CAT relief, an applicant carries the burden of proof to "establish that it is more likely than not that he [] would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Torture is the intentional infliction of "severe pain or suffering, whether physical or mental." 8 C.F.R. § 208.18(a)(1). The regulations require the applicant to demonstrate that the torture would be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Sanchez Jimenez, 492 F.3d at 1239 (quoting 8 C.F.R. § 208.18(a)(1)).

An alien who fails to satisfy the statutory requirements for withholding of removal under the INA rarely qualifies for CAT relief. Compare 8 C.F.R. § 1208.16(b)(2) ("An applicant [seeking withholding of removal] . . . may demonstrate

8

that his or her life or freedom would be threatened in the future in a country if he or she can establish that it is more likely than not that he or she would be persecuted."), with id. § 1208.16(c)(2) ("The burden of proof is on the applicant for withholding of removal under [the CAT] to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."). Because, as discussed above, the record does not compel a finding that Manzella-Oliveros is more likely than not to be persecuted in Venezuela, it also does not compel the conclusion that he is likely to suffer torture covered by the CAT. Cf. id. § 1208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture."). Therefore, the IJ and the BIA properly denied Manzella-Oliveros relief.

**PETITION DENIED.**