

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-12-2005

# Paripovic v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-4193

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Paripovic v. Atty Gen USA" (2005). *2005 Decisions.* Paper 611.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/611

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4193

ZELJKO PARIPOVIC

Petitioner

v.

*ALBERTO R. GONZALES, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,

Respondent

* Substituted pursuant to Rule 43c, F.R.A.P.

On Appeal from an Order entered before
The Board of Immigration Appeals
(No. A72-780-152)

Argued December 13, 2004

Before: AMBRO, VAN ANTWERPEN and STAPLETON,
Circuit Judges

(Opinion filed   August 12, 2005 )

Sunit K. Joshi, Esquire (Argued)
Sokol Braha, Esquire
Joshi & Associates, P.C.
225 Broadway, Suite 705
New York, NY  10007

      Attorneys for Petitioner

Peter D. Keisler
   Assistant Attorney General
Civil Division
Richard M. Evans
   Assistant Director
Douglas Ginsburg, Esquire
John D. Williams, Esquire
David E. Dauenheimer, Esquire (Argued)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C.   20044

      Attorneys for Respondent

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge

Zeljko Paripovic ("Paripovic") petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the denial by an Immigration Judge ("IJ") of his application for asylum and withholding of deportation. We deny the petition (except as to the designation of Croatia as the alternate country for deportation). In so doing, we decide what is for us an issue of first impression – the meaning of "last habitually resided" under 8 U.S.C. § 1101(a)(42) for a "stateless" individual.

## I.    Facts and Procedural History

Paripovic is an ethnic Serb born in Croatia in 1964. Although he holds a birth certificate naming Croatia as his birthplace, Paripovic conceded before the IJ that he was rendered stateless by the dissolution of the former Yugoslavia in 1992, and much of the parties' dispute is centered on whether his claims should be analyzed with Croatia or Serbia as the frame of reference.[1]

Turning first to his claims related to persecution in

---

[1]The Republic of Croatia declared independence from the former Yugoslavia in June of 1991.

Croatia[2], Paripovic testified before the IJ that in October 1990 he was caught in a police round-up of Serbian men and boys. The police detained him in a camp for one month, where he and others were "torture[d]," "harassed," and beaten. Approximately eleven months later, Croatian soldiers came to Paripovic's village and told the Serbs to "leave the country." Fearing that the ruling government was in the process of carrying out the objective of making the country "pure Croatian," Paripovic and his parents fled to Serbia in August 1991. At some point during their flight, Paripovic and his mother were separated from his father. (They never saw nor heard from him again.)

In Serbia, Paripovic and his mother lived in an old schoolhouse that served as part of a refugee camp. Although conditions were poor, there is no indication that Paripovic was beaten, tortured, or threatened. He was free to leave the camp at any time, but he had "no place to go." When military police began recruiting refugees to fight in Croatia, he fled Serbia in

---

[2]Two of those claims can be dealt with summarily. Paripovic argues in his brief that he is entitled to a humanitarian grant of asylum based on the severity of his past persecution alone. At oral argument, counsel agreed that this claim is not properly before us, as it was not raised before the agency. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 594 (3d Cir. 2003). He also agreed that no claim under the Convention Against Torture is before us.

December 1993 to avoid being conscripted.

Paripovic entered the United States at Puerto Rico without inspection in January 1994. Within days he was placed in deportation proceedings. Conceding deportability, Paripovic filed an application for asylum and withholding of deportation. The IJ denied his application, and Paripovic appealed to the BIA. Without discussing the merits of the appeal, the BIA remanded the matter to the Immigration Court in December 2000 because portions of the transcript were missing (or never made).

On remand, Paripovic's case was transferred to the Immigration Court in Newark, New Jersey. At a hearing in April 2001, the IJ decided, with Paripovic's consent, to examine his claims anew. The IJ set a hearing date for June 20, 2001, but on that date Paripovic requested a continuance. The IJ granted it and advised Paripovic that if he intended to call a witness to testify about current conditions in Croatia and Serbia, that witness should be an expert. The case was continued several times more, ultimately being heard in January 2002.

At that hearing, Paripovic asked again for an adjournment of the proceedings because the expert witness he intended to call was in Bosnia. The IJ denied the request. Turning to the merits, the IJ found that Paripovic was generally credible. The IJ agreed with Paripovic that the treatment of Serbs in Croatia was "discriminatory" and in many cases "involved acts of

persecution." This credibility finding notwithstanding, the IJ determined that Paripovic was not a refugee. In making this determination, because Paripovic was a stateless individual, the IJ inquired about the country in which he had "last habitually resided" to determine whether he would face persecution in that location, 8 U.S.C. § 1101(a)(42)(A), and determined that Serbia was that country.

Because Paripovic's objection to being returned to Serbia was that he might be drafted to fight in a civil war and there was no longer ongoing conflict, his objection was no longer valid to the IJ, who concluded that Paripovic had no legitimate fear of persecution or torture in Serbia. The IJ issued a deportation order designating Serbia as the primary deportation country and Croatia as the alternate.[3]

---

[3]At oral argument, counsel for the Government conceded that the alternate designation of Croatia was in error. With respect to persecution in Croatia, the IJ made no formal findings, but "agree[d] that the treatment of Serbs in Croatia . . . in many cases involves actions of persecution. The Court is inclined to believe the testimony of [Paripovic] overall in terms of his experiences in Croatia." Because there is no indication at this time that Paripovic will be deported to Croatia, we do not remand for consideration of this issue, but will grant his petition insofar as it seeks to vacate the alternate designation of Croatia.

6

The BIA dismissed Paripovic's appeal in September 2003. It concluded that his contention that the IJ erred in not granting the continuance was "without merit" (as the expert witness could have provided testimony in the form of an affidavit), and it otherwise adopted the IJ's decision.

## II.    Standard of Review

Because Paripovic's deportation proceedings began prior to April 1, 1997, our jurisdiction arises from the former Immigration and Nationality Act ("INA") § 106, 8 U.S.C. § 1105a, and is governed by the transitional rules of § 309(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996).

In a slightly different context, we have concluded that the determination of habitual residence is a mixed question of law and fact. *See Delvoye v. Lee*, 329 F.3d 330, 332 (3d Cir. 2003) (determining a child's "habitual residence" under the Hague Convention on the Civil Aspects of International Child Abduction by reviewing the district court's conclusion as a mixed question of law and fact). Although in *Najjar v. Ashcroft*, 257 F.3d 1262, 1294 (11th Cir. 2001), the Court reviewed the agency's last habitual residence determination based on the substantial evidence standard, no question of statutory interpretation was presented and the dispute was strictly based on the factual findings. Because the last habitual residence issue

can be resolved in our case only by both determining the facts of the case and deciding what the applicable law means, we review the determination under a mixed standard of review. Review of the BIA's legal conclusions is *de novo*, with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles. *Abdulai,* 239 F.3d 542, 551-52 (3d Cir. 2001).[4]  Regarding factual

---

[4]It is well-settled that the BIA's interpretation and application of immigration law are subject to deference under the principles of *Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc*., 467 U.S. 837, 842-43 (1984). *See Tineo v. Ashcroft*, 350 F.3d 382, 396 (3d Cir. 2003) (*citing INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999)).  The issue of whether deference may be due here is complicated slightly by the consideration that the BIA did not include a statement explaining its interpretation of § 1101(a)(42)(A). Rather, citing *Matter of Burbano*, 20 I.&N. Dec. 872, 874 (BIA 1994), it expressly adopted the IJ's decision.  *See Tchoukhrova v. Gonzales*, 404 F.3d 1181, 1188 (9th Cir. 2005) (explaining that "[w]hen the BIA does not express any disagreement with any part of the immigration judge's decision, but instead cites *Burbano*, the BIA adopts his decision in its entirety."); *Gishta v. Gonzales*, 404 F.3d 972, 980 (6th Cir. 2005) (explaining that citation of [*Burbano*] . . . does not mean that the [BIA] did not exercise its independent review authority over the case, but rather . . . [it] adopts or affirms the immigration judge's decision when it is "in agreement with the reasoning and result of that decision" (*quoting Burbano*, 20 I. & N. Dec. at 874)).

8

When the BIA has affirmed without opinion the decision of the IJ under 8 C.F.R. § 1003.1(e)(4)(ii), we have previously doubted whether its affirmance is entitled to deference. *See Smriko v. Ashcroft,* 387 F.3d 279, 289 n.6 (3d Cir. 2004) ("[I]t would seem to be, at the very least, an open question as to whether an IJ's decision affirmed through the streamlining process would be entitled to *Chevron* deference. . . . [D]eferring to the reasoning of an IJ from which the BIA would be free to depart in other cases would seem highly problematic."). A *Burbano* affirmance, however, significantly differs from a streamlining decision under 8 C.F.R. § 1003.1(e)(4)(ii), which "approves the result reached in the decision below[, but] does not necessarily imply approval of all of the reasoning of that decision." In *Burbano,* the BIA concluded that its

> independent review authority does not preclude [it] from adopting or affirming a decision of the immigration judge, in whole or in part, when we are in agreement with the *reasoning and result of that decision*. In this situation, the Board's final decision may be rendered in a summary fashion; however, such summary treatment of a case does not mean that we have conducted an abbreviated review of the record or have failed to exercise our own discretion.

*Burbano*, 20 I. & N. Dec. at 874 (emphasis added). Given that the BIA has indicated that its analysis has not been truncated, and approves both the IJ's reasoning as well as the result, the

determinations, we affirm findings of fact supported by substantial evidence. *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001). We are thus bound by the administrative findings of fact unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion. 8 U.S.C. § 1252(b)(4)(B); *see also Abdille*, 242 F.3d at 483.

## III. Analysis

### A. Last Habitual Residence

"A grant of asylum allows an otherwise-removable alien to stay in the United States." *Abdulai*, 239 F.3d at 545. "Subject to numerous exceptions not implicated in this case, the Attorney General may grant asylum to an alien he determines to be a refugee." *Id*. (internal citation omitted). A "refugee" is defined as

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person *last habitually resided*, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of

decision is entitled to deference.

10

persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42) (emphasis added). Paripovic argued below—and the IJ accepted—that Paripovic is a "stateless" individual. He strenuously argues that the IJ should have determined that he last habitually resided in Croatia.

The IJ reasoned:

In this case the Court determines that the respondent last habitually resided in Serbia. He resided in Serbia from August of 1991 to December of 1993. The Immigration and Nationality Act defines the concept of residence and it states the "term residence means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." Particularly relevant there in this definition is the issue of intent. The respondent may well not have intended to stay in a refugee camp his whole life, but the Court feels that the amount of time he spent there makes it fairly clear that his last place of habitual residence was Serbia.

11

Under *Chevron*, we must determine whether "the statute is silent or ambiguous with respect to the specific issue," and, if so, "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843; *see also Okeke v. Gonzales*, 407 F.3d 585, 588 (3d Cir. 2005). Here, the INA states that an individual's refugee status shall be determined "in the case of a person having no nationality" by his or her relationship with the "country in which such person last habitually resided," § 1101(a)(42), but it nowhere clarifies the meaning of "last habitually resided." Given the silence as to the meaning on this specific issue, we consider whether the answer is based on a permissible construction of the statute.

Though "last habitually resided" is undefined, the INA does define the term "residence" as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent," 8 U.S.C. § 1101(a)(33); *cf.* 8 C.F.R. § 214.7(4)(i) (defining "habitual residence" for determining citizenship of the territories and possessions of the United States as the "place of general abode or a principal, actual dwelling place of a continuing or lasting nature"). It was for this reason that the IJ concluded that Paripovic's intent was irrelevant to the analysis. Paripovic argues that it was not his choice to live in Serbia, and therefore it should not be deemed to be his place of last habitual residence. This argument, however, essentially replaces the notion of "intent" with the concept of "choice." They are too similar to provide a basis for concluding that the IJ, given due

12

deference, erred in his analysis.

Although the IJ does not expressly define "habitual," his reasoning makes clear that he understood this term to relate to the "amount of time [Paripovic] spent there."   "Habitual" may be defined as "established by long use" or "usual." *See Chen v. Mayflower Transit, Inc*., 315 F. Supp. 2d 886, 911 n.22 (N.D. Ill. 2004) (*citing* The American Heritage College Dictionary 609 (3d ed. 2000) (defining "habitual" as, *inter alia*, "[e]stablished by long use; usual")).  Thus it was permissible (if not necessary) for the IJ to consider the duration of time that Paripovic lived in Serbia.

Having concluded that the IJ's interpretation of the statute was permissible, we next consider whether his factual findings were supported by substantial evidence.  There is no dispute that Paripovic resided in Serbia for more than two years in a permanent (or at least semi-permanent) dwelling.  These facts are sufficient given our narrow standard of review.

Lastly, Paripovic argues that the fact that he lived in Serbia under duress negates the "habitual" finding.  There is no evidence, however, that he was prevented from leaving Serbia, and as a result we cannot say we are compelled to reach a contrary conclusion.  Thus, the last habitual residence determination by the IJ is supported by substantial evidence.

## B. Persecution in Serbia

Because the IJ properly determined that Serbia is Paripovic's country of last habitual residence, we analyze his asylum and withholding of deportation claims as they relate to that country. To establish eligibility for asylum on the basis of past persecution, an applicant must show, *inter alia*, an incident (or incidents) that rise to the level of persecution or a well-founded fear of future persecution. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003); 8 U.S.C. § 1101(a)(42)(A). Turning first to past persecution, Paripovic contends that the efforts of the military police to conscript him to fight in Croatia is such persecution, but we have explained that it is "generally accepted 'that a sovereign nation enjoys the right to enforce its laws of conscription, and that penalties for evasion are not considered persecution.'" *Lukwago v. Ashcroft*, 329 F.3d 157, 168-69 (3d Cir. 2003) (*quoting M.A. v. INS*, 899 F.2d 304, 312 (4th Cir. 1990) (*en banc*)); *see also Ambartsoumian v. Ashcroft*, 388 F.3d 85, 93 (3d Cir. 2004) ("[C]conscription by a sovereign nation cannot constitute persecution under 8 U.S.C. § 1101(a)(42)).

In addition, though Paripovic argued before the IJ and BIA that Serbia may forcibly remove him to Croatia, there is little evidence in the record to support this argument, and in any event there is contrary evidence on which the IJ relied. He also determined that the draft was no longer in effect, and this determination has not been challenged before us. Thus, the

14

conclusion that Paripovic neither was persecuted nor has a well-founded fear of persecution in Serbia is supported by substantial evidence. Moreover, because he failed to establish eligibility for asylum, Paripovic necessarily also failed to meet the more stringent standard for showing a "clear probability of persecution" to be eligible for withholding of deportation. *Reynoso-Lopez v. Ashcroft*, 369 F.3d 275, 278 (3d Cir., 2004) (*quoting INS v. Stevic*, 467 U.S. 407, 420 n.13 (1984).[5]

---

[5]At the January 2002 hearing (at which time his case had been pending for approximately eight years), the IJ denied Paripovic's last-minute request for continuance due to his expert's unavailability. In view of the multiple prior continuances, the fact that the IJ had advised Paripovic about the desirability of expert testimony, and the lack of any explanation for why counsel had failed to raise the expert's unavailability prior to the day of the hearing when he seemingly should have known to do so, we cannot say that the refusal to continue the hearing violated Paripovic's right to procedural due process. *Cf. Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 377 (3d Cir. 2003) (holding that denial of counsel's request for continuance and then proceeding with asylum hearing without counsel, where counsel requested continuance only two days before hearing and failed to explain his absence, was not an abuse of discretion).

\* \* \* \* \*

Accordingly, we grant Paripovic's petition to the extent that it seeks to vacate the designation of Croatia as the alternate country for deportation, and deny the petition in all other respects.