

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-13-2005

# Jera v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4313

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Jera v. Atty Gen USA" (2005). *2005 Decisions.* Paper 120.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/120

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-4313

———

MAJLINDA JERA,
Petitioner

v.

∗ALBERTO R. GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

∗(Substituted pursuant to Fed. R. App. Rule 43(c))

———

Petition for Review of the Order
of the Board of Immigration Appeals
(A95-846-052)

———

Submitted Under Third Circuit LAR 34.1(a)
December 12, 2005

Before: SLOVITER, SMITH, and STAPLETON, Circuit Judges.

(Filed: December 13, 2005)

———

OPINION

———

SLOVITER, Circuit Judge.

## I.

Majlinda Jera is a native and citizen of Albania who entered the United States on or about May 7, 2001, using a passport issued in someone else's name.  On September 20, 2002, Jera requested political asylum by filing a form I-589 with the INS.  On November 7, 2002, the Immigration and Nationality Service ("INS") instituted removal proceedings pursuant to section 237(a)(1)(A) of the Immigration and Nationality Act ("INA") charging that, at the time of her entry, Jera was not in possession of a valid entry document as required by law.  Through her attorney, Jera conceded removability and requested relief from removal in the form of asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

Jera based her claim for relief on abuses that she claims to have suffered as a result of her status as a supporter of the Democratic Party in socialist Albania.  She claims, inter alia, that in 1997 she was attacked by three fellow students because she was talking to classmates about politics, that "between 1999 and 2000, my family and I were threatened many times," App. at 206, that she received a letter in August of 2000 stating that she was being watched by one of her students, and that on the following day, her home was ransacked and the perpetrators took only documentation concerning the Democratic Party.        In her written asylum application, Jera also alleged that, in June of 2001, she was chosen to be a democratic observer at elections being held that month.  Two days prior to the elections, two men with masks grabbed her but she escaped.  Even after she

2

escaped their grasp, the men continued to insult and threaten her.  Jera claimed that thereafter she stayed in her home "all the time until November 16, 2001 when [her] father arranged for [her] to leave the country," App. at 206, and that she arrived in the United States on November 17, 2001.

At her hearing before the IJ and in a supplemental affidavit, Jera's account of the abuse she suffered differed significantly from the description she submitted in her asylum application.  When questioned about the attack she suffered at the university, Jera could not recall the month or year of the attack.  She failed to testify about any of the threats that she claimed to have received while living with her family and she failed to testify that her home was ransacked and her political papers were stolen.  She also admitted that she actually arrived in the United States on May 7, 2001, more than six months before the arrival date listed on her application for asylum and nearly one month prior to the alleged attack by masked strangers.  Jera testified that she did not actually know when the alleged attack by the masked men occurred, but believed it might have been some time in November or December of 2000.  She also testified that she was never selected to be an observer at the elections in June of 2001.  Rather, she had only served as an election observer in October of 2000.  Jera further testified that she did not report any incidents of violence to the police, believing that the police would be non-responsive.

At her hearing, Jera produced a valid Albanian passport in her own name.  The passport showed that, in February of 1999, Jera had traveled from Albania to Greece to visit siblings who lived there.  The passport also showed that Jera had obtained a multiple

3

entry visa in November of 1999 and that she requested a visa from the American consul in May of 2000, which was denied.

The IJ rejected Jera's claim for asylum on the basis that it was barred because her application was not filed within one year of her arrival in the United States as required by 8 U.S.C. § 1158(a)(2)(B). Jera offered the following excuses for her delay: she feared that as a Muslim from Albania, she would be detained if she filed an asylum application following the events of September 11, 2001, and that her fear of detention was further increased because she was a pregnant woman who had been diagnosed with hepatitis B. The IJ found that Jera's excuses for the delay did not "come within the criteria of exceptional circumstances that would excuse her failure to have timely submitted an application for asylum in the United States within the one year period of time." App. at 72. That decision is not reviewable by this court. See 8 U.S.C. § 1158(a)(3).

The IJ also rejected Jera's applications for withholding of removal and protection under the CAT, noting that, even had Jera's application not been time-barred, "she would not have met her burden of proof to have supported a grant of political asylum in the United States." App. at 79. Because withholding of removal requires a higher standard of proof than asylum, the IJ found that Jera did not meet her burden with respect to withholding. The IJ found that Jera's testimony was not "totally credible nor persuasive." App. at 81. The IJ described Jera's application for relief as "skeletal in nature" and found that the "testimony provided by this respondent under oath is extremely lacking in specificity and persuasiveness. Her testimony is at odds with her written submission

4

which alludes to several events which the respondent failed to provide any reference to in her testimony." App. at 79-80. The IJ held that there was "no reason or no basis to conclude that this respondent would be targeted on account of any enumerated ground that would support her claim of withholding of removal pursuant to section 241(b)(3) of the Act." App. at 81.

With respect to Jera's request for protection under the CAT, the IJ found that "[c]ertainly, there is nothing in this record to establish that anyone would have any interest in this respondent and would seek to torture her or persecute her on any of the grounds contained within the regulations or the statute relevant to the provisions of this case." App. at 81.

The IJ denied Jera's applications for asylum, withholding of removal, and protection under the CAT, and rejected Jera's request for voluntary departure and ordered Jera removed from the United States to Albania.[1] The Board of Immigration Appeals ("BIA") adopted and affirmed the decision of the IJ, specifically noting that the IJ properly concluded that Jera did not establish exceptional circumstances to overcome the time bar of her asylum application and that Jera failed to establish a nexus between the alleged violence suffered and a protected ground. On November 12, 2004, Jera filed a

---

[1] We do not read the IJ's statement that Jera's application is "nothing short of frivolous," App. at 80, as a finding of frivolousness within the meaning of 8 U.S.C. § 1158(d)(6), and the government does not contend the contrary.

petition for review in this Court.

## II.

## A.

We need spend little time on Jera's claim that the BIA erred by affirming the decision of the IJ via a <u>per curiam</u> opinion. In its affirming opinion, the BIA adopted the decision of the IJ and cited <u>Matter of Burbano</u>, 20 I. & N. Dec. 872, 874 (BIA 1994), where the BIA held that the adoption or affirmance of the IJ's decision, in whole or in part, is "simply a statement that the Board's conclusions upon review of the record coincide with those the Immigration Judge articulated in his or her decision." <u>Id.</u> at 874. The BIA also expressly concurred in the IJ's holding that Jera's asylum application was time barred and that Jera did not establish a nexus between the harm she suffered and one of the protected grounds.

In contrast to a streamlining decision under 8 C.F.R. § 1003.1(e)(4)(ii), a <u>Burbano</u> affirmance adopts the reasoning and the result of the IJ's decision. <u>Paripovic v. Gonzales</u>, 418 F.3d 240, 244 (3d Cir. 2005). Thus, Jera's claim that the BIA did not engage in a meaningful review of her case is without merit.

## B.

We review an adverse credibility determination under the substantial evidence standard, <u>Chen v. Ashcroft</u>, 376 F.3d 215, 222 (3d Cir. 2004), and will uphold the credibility determination of the BIA or IJ unless "any reasonable adjudicator would be

6

compelled to conclude to the contrary." Id. (citing 8 U.S.C. § 1252(b)(4)(B)). Jera argues that the IJ erred in making an adverse credibility finding based on the record evidence but she does not cite any case law to support her abuse of discretion or due process claims; rather, her brief simply makes conclusory statements that the IJ violated her rights.

The Government, in turn, argues that Jera's testimony was "lacking in specificity and persuasiveness," Resp't. Br. at 18 (citing the decision of the IJ, A.R. at 80), noting that Jera testified to only two instances of abuse at her hearing before the IJ, and was vague as to the dates and places of specific events, including the month of her arrival in the United States, the month or year when she was attacked at the university, and the month of her attack at the hands of masked strangers. At the hearing she did not mention threats made by neighbors, by communist supporters, threats made to her family, and threatening letters sent by her students, which were alleged in her written asylum application.

Moreover, as the Government notes, Jera's testimony differed substantially from her written asylum application. Resp't. Br. at 19-20. In her application, Jera claimed that she was "attacked and suffered severely" as a result of her involvement with the elections of October of 2000, but before the IJ, Jera testified that nothing happened when the elections were held. Id. at 19; A.R. at 122-23.

For the reasons set forth by the IJ which are fully supported by the record, we will deny the Petition for Review.

7