

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-7-2007

# Neyor v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2807

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Neyor v. Atty Gen USA" (2007). *2007 Decisions.* Paper 122.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/122

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 06-4349 & 06-2807
_____

SHADRACK POYON NEYOR,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
Agency No. A29 744 736
Immigration Judge: Daniel Meisner

_____

Submitted Under Third Circuit LAR 34.1(a)
October 23, 2007

Before:     MCKEE, SMITH and CHAGARES, Circuit Judges

(Filed: December 7, 2007)

_____

OPINION

_____

PER CURIAM

Shadrack Poyon Neyor petitions for review of a decision of the Board of

Immigration Appeals (BIA), dismissing his appeal from a final order of removal.

Neyor, a native and citizen of Liberia, entered the United States in 1990 as a visitor. He was found removable in 1995 because he had stayed beyond the period authorized, he had been convicted of a drug offense, and he was an aggravated felon. In 1999, an immigration judge denied Neyor asylum and withholding of removal, but granted deferral of removal based on the United Nations Convention Against Torture ("CAT"), 8 CFR § 1208.17(a), because of deteriorating human rights conditions in Liberia occasioned by the civil war there.[1] Neyor did not appeal the IJ's denial of asylum and withholding of removal.

In 2005, after he had served a sentence for a subsequent federal fraud conviction, Neyor was transferred to the custody of the Department of Homeland Security (DHS). The DHS filed a motion to terminate deferral of removal based on changed conditions in Liberia, due to the end of the civil war in 2003, Charles Taylor's subsequent flight from the country, and the democratic election of President Johnson-Sirleaf. Neyor did not submit a new supplement to the I-589 application, but he did oppose the government's

---

[1] In his asylum application and supplement filed in February 1999, Neyor claimed that he and his family were associated with the National Democratic Party of Liberia "NDPL"), which supported then president Samuel Doe and opposed Taylor's rebel forces. One of Neyor's brothers held a cabinet position in the Doe government and Neyor himself served as one of the Regional Supervisors of the NDPL. Neyor described the torture he received at the hands of Taylor's rebel army some time between 1986 and 1989. He also claimed that his sister was murdered by rebel forces in the 1990s for her anti-Taylor political activities as chair of the Women's Wing of the NDPL. Another brother, a youth organizer for the NDPL, was tortured and murdered by Taylor rebels in 1996. Neyor's mother died of a heart attack in 1998, after rebels supporting President Taylor burned down her home.

motion, claiming that the reasons for granting deferral in 1999 had not changed enough to warrant terminating the deferral of removal. Neyor pointed to the 2005 Department of State Country Report on Liberia ("2005 DOS Country Report") in support of his argument that conditions had not changed appreciably and submitted a press release dated August 16, 2005, announcing the DHS's extension of Temporary Protected Status ("TPS") for Liberia to and including October 2006, because of persistent poor human rights conditions there. He alleged that factions of the Taylor rebels who had killed his relatives were still in the country waiting to strike at any opportunity, as they had done in the past. He also claimed that his cousin was beheaded upon his return from exile to Liberia after the civil war ended.

Proceeding pro se at the hearing held in March and April 2006, Neyor testified to his torture by Taylor rebels and to the deaths of his mother and sister, consistent with his I-589 application filed in 1999. As for the recent election of Johnson-Sirleaf as President, Neyor testified that, even though the election took place, Taylor factions could still be found in outlying areas. Although he believed that the United Nations and other humanitarian organizations were fighting hard to bring peace to Liberia, it was too soon for him to return. "What I'm asking the government for [is] an additional time, so that when things are better, then I can return home." He admitted to two criminal convictions, one in New Jersey in 1995 for delivering two grams of a controlled substance to an undercover officer, and another conviction in 2004, in the United States District Court for

3

the Northern District of Georgia, for bank, wire, and mail fraud. Except for a passing reference to his cousin's death, Neyor did not testify about the particular circumstances of his cousin's beheading in Liberia after the civil war ended.

In April 2006, the Immigration Judge granted the motion to terminate the deferral of removal and ordered Neyor removed. Accepting as true Neyor's testimony of torture occurring sometime in 1986-89, the IJ concluded that Neyor could no longer establish that it was more likely than not that he would be tortured by the government (now led by Johnson-Sirleaf) or with its consent or acquiescence. The IJ noted that Neyor was not afraid of the Liberian government. Rather, Neyor feared non-governmental rebel factions in the country that were still sympathetic to Taylor and was concerned that the Johnson-Sirleaf administration might be too weak at this early stage to "hold sway and be strong." Although the IJ acknowledged that it would take some time for things to return to normal in Liberia with the new administration, he considered Neyor's fears to be speculative. In deciding to terminate the deferral of removal, the IJ noted Judge Strasser's 1999 ruling that Neyor was ineligible for withholding of removal based on his drug conviction, which Neyor did not appeal, and Neyor's 2004 conviction for bank, wire, and mail fraud. Based on the foregoing, the IJ granted termination of deferral of removal, denied Neyor's application for protection under the CAT, and ordered Neyor's removal to Liberia.[2] The

---

[2] In September 2005, Neyor filed a § 2241 habeas petition in the Western District of Texas, which was transferred to the District of New Jersey. Neyor amended the petition in May 2006, challenging the IJ's April 21, 2006 order terminating deferral of removal.

4

Board of Immigration Appeals (BIA) adopted and affirmed the IJ's oral decision. Neyor filed a timely pro se petition for review docketed at No. 06-4349.[3]

We have jurisdiction to review a final order of removal. 8 U.S.C. § 1252(b)(2) & (d). By citing Matter of Burbano, 20 I. & N. Dec. 872, 874 (BIA 1994), the BIA expressly agreed with the IJ's reasoning and results, and adopted the IJ's decision. See Paripovic v. Gonzales, 418 F.3d 240, 244 n. 4 (3d Cir. 2005) (citing other cases). We review the IJ's opinion to determine whether the BIA's decision to defer to the IJ was appropriate. Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005). On a petition for review, we are limited to "pure questions of law and to issues of application of law to fact, where the facts are undisputed and not the subject of challenge." Francois v. Gonzales, 448 F.3d 645, 647-48 (3d Cir. 2006) (citing Kamara v. Attorney General, 420

---

The District Court severed the § 2241 petition and transferred Neyor's amended petition to this Court. The amended petition, treated as a petition for review of the IJ's removal order, is docketed at No. 06-2807. We lacked jurisdiction to consider the IJ's removal order at that time because Neyor had not exhausted his administrative remedy in the BIA. See INA § 243(h); Alleyne v. INS, 879 F.2d 1177, 1182 (3d Cir. 1989). Neyor has since filed a timely appeal from the removal order with the BIA. Neyor's petition for review of the BIA's decision affirming the removal order is docketed as No. 06-4349. The two appeals have been consolidated.

[3] The Government mistakenly asserts that Neyor filed an untimely petition for review of the 2006 removal order on October 5, 2006. The record indicates that, on September 5, 2006, Neyor mailed an amended petition for review in appeal No. 06-2807, which this Court received on September 11, 2006, well within the time period allowed. The Amended Petition was docketed as a separate appeal (No. 06-4349) on October 5, 2006.

5

F.3d 202, 211 (3d Cir. 2005).[4]  We review the BIA's legal decisions de novo, but will afford *Chevron* deference to the BIA's reasonable interpretations of statutes which it is charged with administering.  Id.

The DHS may seek termination of deferral of removal "at any time" while the deferral of removal is in effect.  See 8 C.F.R. § 1208.17(d)(1).  Upon proper notice to the alien, the IJ conducts a hearing to make a de novo determination based on the record of the proceeding, the initial application, and any new evidence submitted by the alien and the government.  Id. at § 1208.17(d)(2) & (3).  The government's motion "shall be granted" if it is accompanied by new evidence relevant to the question whether the alien is more likely than not to be tortured upon his removal to the designated country.[5]  Id. at § 1208.17(d)(1).

Once the government meets its burden, the alien must establish that it is more likely than not that he would be tortured in the country as to which removal has been deferred.  Id. at § 1208.17(d)(3).  Factors to be considered in determining whether torture is likely to occur are (1) evidence of past torture inflicted on the applicant; (2) the ability

_____

[4]  Neyor's claim that the IJ erroneously found that the 1999 deferral order was granted because Neyor's brother held a cabinet post in the Doe government raises a question of fact that is not subject to our review.

[5]  Along with its motion to terminate deferral of removal, the government submitted the 2004 DOS Country Report on Liberia.  By the time the hearing occurred, the IJ had obtained a copy of the 2005 DOS Country Report on Liberia.  The IJ gave a copy to Neyor and included the report in the administrative record.

to relocate to an area where torture won't occur; (3) evidence of gross, flagrant, mass violations of human rights; and (4) other relevant evidence. See Lavira v. Attorney General, 478 F.3d 158, 166 (3d Cir. 2007). Among other things, the act of torture must be an intentional act by or at the instigation of or with the consent or acquiescence of a public official. Id.

Neyor argues that the IJ failed to consider his claim that evidence of persistent human rights violations in Liberia in 2005 indicates that his fear is well-founded that he is as likely to be tortured upon his return as he was in 1999. Neyor points to the DHS's extension of TPS for Liberians from August 2005 through October 2006, and the 2005 DOS Country Report on Liberia. The IJ summarily dismissed Neyor's testimony about his fears of future torture by Taylor forces lying in wait in outlying areas of Liberia, apparently relying on the 2005 DOS Country Report on Liberia. The 2005 DOS Country Report specifically rebuts Neyor's testimony, stating that "[u]nlike in the previous year, former rebel combatants no longer retained control of some rural areas. Civilian authorities generally maintained effective control over security forces." Id. at 1. Thus, even assuming that gross human rights violations continued to persist in Liberia, they were not attributable to the rebel forces that Neyor feared and there was no evidence that the Liberian government was unable or unwilling to control the rebel factions.

Next, Neyor argues that he made a showing that it was more likely than not that he would be tortured based on instances of past persecution of him and of his family. The IJ

7

correctly relied solely on Neyor's testimony regarding his own torture, which occurred some time between 1986 and 1989, and not the torture of his relatives, consistent with the first factor provided in the CAT, 8 C.F.R. § 1208.16(c)(3).  Even if the torture of Neyor's family members could be considered, the truly tragic deaths of his sister, brother, and mother at the hands of the Taylor rebels occurred before Taylor left the country, before the civil war ended, and well before Johnson-Sirleaf took office.  Thus, the government's evidence of changed country conditions in Liberia in 2005 rebuts any presumption of future torture to which Neyor might be entitled under the CAT.  See e.g., Islami v. Gonzales, 412 F.3d 391, 398 (2d Cir. 2005)( holding that, for purposes of asylum, presumption of future persecution of an Albanian who fled Yugoslavia to avoid the draft was rebutted by evidence that the Serb domination of Kosovo had ended).

Accordingly, the petition for review will be denied.