

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2008

# Zakarias v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3160

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Zakarias v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1152.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1152

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3160
_____

STANLY ZAKARIAS;
MARIANA NON KOAPAHA;
BRANDEN ZACHARIAS,
                                              Petitioners


v.


ATTORNEY GENERAL OF THE UNITED STATES,
                                              Respondent


_____


On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A98-273-337, A98-273-338, A98-273-339)
Immigration Judge:  Honorable Rosalind Malloy

_____


Submitted Pursuant to Third Circuit LAR 34.1(a)
May 21, 2008
Before: SLOVITER, STAPLETON and COWEN, Circuit Judges

(Opinion filed May 22, 2008)
_____

OPINION
_____

PER CURIAM

          Petitioners Stanly Zakarias, Mariana Non Koapaha, and Branden Zacharias petition

for review of an order of the Board of Immigration Appeals (BIA) denying their

application for asylum, withholding of removal, and protection under the Convention

Against Torture (CAT).  For the reasons that follow, we will deny the petition for review.

Stanly Zakarias is a native and citizen of Indonesia who is a Seventh Day

Adventist.  Zakarias arrived in the United States in May 2003 with his son, Branden

Zacharias, pursuant to a B-2 tourist visa allowing the pair to remain in the United States

until November 3, 2003.  Zakarias's wife, Mariana Non Koapaha, also a native and citizen

of Indonesia, arrived in the United States on December 27, 2001, pursuant to a B-2 tourist

visa authorizing her to remain in the United States through June 26, 2002.  On December

21, 2003, Zakarias filed an application for asylum based on race, religion, and membership

in a particular social group; he also filed for withholding of removal and protection under

the CAT.[1]  Zakarias is the lead applicant and the claims of his wife and son are derivative

of his.  In 2004, the Department of Homeland Security (DHS) served each petitioner with

a Notice to Appear.

On February 9, 2006, the Immigration Judge (IJ) conducted an evidentiary hearing

during which only Zakarias testified.  Zakarias testified that he first came to the United

States in June 2002, stayed for five months, and then returned to Indonesia.  After

---

[1]  In the proceedings before the IJ, Zakarias's testimony only supported a claim for relief based on his religion.  For reasons which are unclear, Zakarias asserts in his appellate brief that he was persecuted on account of his Chinese ethnicity (Appellant's Br. at 10).  However, Zakarias testified before the IJ that he was not Chinese and was a native Indonesian.  Thus, this argument appears to have been made in error.

remaining four months in Indonesia unharmed, Zakarias returned to the United States with his minor son.  Zakarias stated that he filed for asylum because he wanted the freedom to worship as he pleased.  In support of this claim, Zakarias testified that people threw rocks at his home two or three times during worship services that were held there.  In 1999, on his way to work, four or five Muslim students stopped him on the street and asked him for identification.  Zakarias claimed that, when they discovered that he was a Christian, they started shouting at him and hitting him on his helmet.  The students took his necklace, wallet, and motorcycle.  During the assault, Zakarias claims they said "you are Christian.  Why don't you go back to where you were."  As a result of the assault, Zakarias suffered a broken or dislocated leg, but did not report the incident to the police.

Zakarias also testified that his former pastor's requests for a building permit to build a bigger church to house the expanding congregation were repeatedly denied.  In addition, after his arrival in the United States, Zakarias alleges that Muslim extremists burned his home while his parents were living in it.  His parents survived the fire, and continued to reside there until their deaths a few months later from an illness.  Zakarias has two brothers and three sisters who are also Christians and who have remained in Indonesia without any problems.

The IJ issued an oral decision denying petitioners' asylum claim because Zakarias failed to establish that he suffered past persecution on account of any of the five enumerated grounds or that he would suffer future persecution on account of any of the five enumerated grounds.  The IJ further held that Zakarias was not eligible for

3

withholding of removal or relief under CAT, but granted the family voluntary departure. Specifically, the IJ found that Zakarias had testified credibly that he was a Seventh Day Adventist, but had not demonstrated that the incidents of persecution he described were motivated by the fact that he was Christian. With respect to the robbery and assault, the IJ found that the assailants were motivated by "greed or robbery." The IJ further found that stones may have been thrown at Zakarias's home because people were annoyed at hearing the noise of gospel singing in the streets, not the fact that the worshipers were practicing Christianity. In addition, the IJ concluded that the Indonesian government required all people to obtain permits in order to build houses of worship, not just Christians. The IJ added that neighborhood approval was also required, but that other individuals in the community – unrelated to the government – might nonetheless oppose the issuance of a permit because they would not want "houses of worship in their vicinity." Finally, the IJ found that, based on the information Zakarias provided and the background materials in the record (which included the 2004 Department of State Report on Human Rights Practices for Indonesia and the 2005 Department of State Report on Religious Freedom for Indonesia), there was no pattern or practice of persecuting Christians in Indonesia. The BIA affirmed the IJ without opinion. Petitioners then filed a timely petition for review.

The legal precepts underlying petitioners' claims are well established. To qualify for the discretionary relief of asylum, an applicant must establish that he is a refugee, as that term is defined in INA § 101(a)(42), 8 U.S.C. § 1101(a)(42)(A). In order to meet this definition, the applicant must show that he is "unable or unwilling to return to . . . [his]

4

country [of nationality] because of persecution or a well-founded fear of persecution," id., and has "the burden of showing that the persecution was on account of the applicant's race, religion, nationality, membership in a particular social group, or political opinion," Lukwango v. Ashcroft, 329 F.3d 157, 170 (3d Cir. 2003). In order for the persecution to qualify under the statute, "the persecutor must be motivated, at least in part, by one of the enumerated grounds." Lukwago, 329 F.3d at 170. An applicant who establishes that he has suffered past persecution on account of one of the five grounds enumerated in the INA "triggers a rebuttable presumption of a well-founded fear of future persecution, as long as that fear is related to the past persecution." Id. at 196 (citing 8 C.F.R. § 208.13(b)(1)) (quotation omitted).

Whereas asylum is discretionary, withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), is mandatory if the applicant meets a more stringent standard – that it is "more likely than not" that he will be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion if deported to his home country. Id. (quoting Lukwago v. INS, 329 F.3d 157, 182 (3d Cir. 2003)). To obtain relief under the Convention Against Torture, an applicant must establish that it is more likely than not that he would be tortured if removed to the proposed country of removal. Toure v. Attorney General of the United States, 443 F.3d 310, 317 (3d Cir. 2006).

Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's opinion. Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). Our review of

the IJ's decision is for substantial evidence, considering whether it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Balasubramanrim v. INS,143 F.3d 157, 161 (3d Cir. 1998) (quotation omitted). The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (quotation omitted).

On appeal, petitioners contend that Zakarias was "robbed and beaten by Muslim[] radicals due to his religion." They also contend that Zakarias suffered "significant mistreatment" that rose to the level of persecution because he had "no freedom of prayer and worship as a Christian." Petitioners further argue that Zakarias demonstrated he has a well-founded fear of future persecution. We will address each of these arguments in turn.

First, substantial evidence supports the Immigration Judge's conclusion that Zakarias failed to meet his burden of proving that the 1999 assault and robbery was perpetrated "on account of" his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). Although the assailants said "you are Christian. Why don't you go back to where you were," during the robbery and assault, the IJ found that the crime was motivated by "greed and robbery," and not Zakarias's Christian religion. Substantial evidence in the record supports this conclusion because the assailants took Zakarias's motorcycle, necklace, and wallet. See Lie v. Ashcroft, 396 F.3d 530, 534 (3d Cir. 2005) (upholding BIA's determination that a single ethnic slur in the course of a robbery was insufficient to establish that thieves were

6

motivated by victim's ethnicity or religion).

Second, petitioners' argument that Zakarias's lack of "freedom of prayer and worship as a Christian" rose to the level of persecution misses the mark because this was not the basis for the IJ's denial of his claim. See Li v. Attorney Gen., 400 F.3d 157, 163 (3d Cir. 2005) (quoting SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.")). Rather, the IJ concluded that the incidents Zakarias described, including Zakarias's pastor's inability to obtain a building permit and the act of throwing stones at his home during prayer services, were not perpetrated on account of an enumerated ground. On appeal, petitioners have not made any specific challenge to these findings. Moreover, even assuming arguendo that petitioners' brief could be read as challenging the above findings, we would not have jurisdiction to consider such a challenge because petitioners failed to raise this issue before the BIA. Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003) (alien is required to raise and exhaust his remedies as to each claim or ground for relief if he is to preserve the right of judicial review of that claim).

Nor does the record before us compel us to conclude that Zakarias has established that he would be individually singled out for persecution or that there is a pattern or practice of persecution against Christians in Indonesia. See 8 C.F.R. § 208.13(b)(2)(iii)(A); Lie, 396 F.3d at 537 ("[T]o constitute a pattern or practice, the

7

persecution of the group must be systemic, pervasive, or organized," and must be "committed by the government or forces the government is either unable or unwilling to control.") (internal quotation marks and citations omitted).

Because we conclude that petitioners failed to establish their eligibility for asylum, we necessarily conclude that they have not satisfied the more stringent requirements for withholding of removal. See Paripovic v. Gonzales, 418 F.3d 240, 246 (3d Cir. 2005). We also conclude that we lack jurisdiction to review the IJ's determination that petitioners were ineligible for relief under CAT, because petitioners failed to administratively exhaust this claim. INA § 242(d)(1), 8 U.S.C. § 1252 (d)(1).

For the foregoing reasons, we will deny the petition for review.