

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-23-2008

# Pahlevi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2391

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Pahlevi v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1144.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1144

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2391
_____

DONYSIUS RIZA PAHLEVI,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A95-837-929)
Immigration Judge: Honorable Charles M. Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
MAY 21, 2008

Before: RENDELL, GREENBERG AND VAN ANTWERPEN, Circuit Judges

(Filed: May 23, 2008)
_____

OPINION OF THE COURT
_____

PER CURIAM

        Donysius Riza Pahlevi petitions for review of a decision by the Board of

Immigration Appeals ("BIA") dismissing Pahlevi's appeal of an immigration judge's

denial of his application for asylum and withholding of removal. For the following reasons, we will deny the petition for review.

Pahlevi is a native and citizen of Indonesia. Pahlevi is ethnically Chinese and a Catholic. Pahlevi also identifies himself as a homosexual. Pahlevi's parents are both deceased and his brother and sister live in Indonesia. On August 28, 2002, Pahlevi applied for asylum and withholding of removal. The former Immigration and Naturalization Service ("INS") commenced removal proceedings on or about October 28, 2002, and charged Pahlevi as removable under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as an alien who remained in the United States for a time longer than permitted.

In support of his application, Pahlevi claimed that he had suffered past persecution and feared future persecution on the basis of his ethnicity, religion, and membership in a particular social group (sexual orientation). Petitioner testified that as a child he was verbally insulted by other children because of his Chinese background. A rock was thrown at him and he still bears the resulting scar. In addition, Pahlevi's family was robbed twice. Both occasions were reported to the police, but they took no action in response. In 1998, Pahlevi witnessed the robbery of a customer's husband outside a salon where Pahlevi worked. The customer's husband was Chinese and was robbed by two Indonesian Muslim men at knife-point. When the robbers saw Pahlevi, they told him to keep quiet or he would die.

2

Pahlevi further testified that he had been baptized Catholic and went to church on a weekly basis. Pahlevi did not claim to have personally experienced any incidents of harm on account of his religion. However, he did describe an incident where his brother-in-law's relative was on her way to a mass when a suitcase containing a bomb exploded next to her and caused her a very serious injury.

In addition, Pahlevi testified that he is gay and wanted asylum because he can be open about his sexuality in the United States and fears the discrimination he would face in Indonesia. Pahlevi testified that when he told his brother and sister about his sexual orientation, they did not respond favorably. Pahlevi confided to a few friends that he was gay, including a close friend named Johnny who was also gay. Johnny owned the salon where Pahlevi worked from 1998-2002. Johnny continues to live in Surabaya and became openly gay before Pahlevi left the country. Although Johnny initially lost customers when he became openly gay, most of those customers later returned. When Pahlevi went shopping with Johnny, people insulted them regarding their sexual orientation. Pahlevi claimed Johnny continues to be verbally insulted in Indonesia.

Pahlevi was also acquainted with another gay individual whom he called "Mr. A." Mr. A had a partner named Johnny ("Johnny II"). Mr. A told Pahlevi that Johnny II was killed by homophobic individuals, but Pahlevi did not have independent knowledge that this was true.

The Immigration Judge ("IJ") rendered an oral decision finding Pahlevi removable

3

as charged and denying his application for asylum and withholding of removal. Although the IJ found that Pahlevi was credible, the IJ concluded that Pahlevi failed to show that the harm he experienced rose to the level of persecution or that he faced a reasonable possibility or clear probability of future persecution on account of one of the statutory grounds. The BIA affirmed, reasoning that Pahlevi's experiences "do not amount to past persecution." The BIA further concluded that the record (which included various articles and the 2004 U.S. Department of State Country Report on Human Rights Practices and the 2004 International Religious Freedom Report for Indonesia) "contains no evidence demonstrating that the respondent faces an individualized risk of persecution or that there is a pattern or practice of persecution." Pahlevi timely petitioned for review of the BIA's order dismissing his appeal.

We exercise jurisdiction to review the BIA's final order of removal under INA § 242(a), 8 U.S.C. § 1252(a). Because the BIA appears to have substantially relied on the findings of the IJ, we have jurisdiction to review the decisions of both the BIA and the IJ. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004).

Our review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998) (quotation omitted). The decisions must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471

4

(3d Cir. 2003) (quotation omitted).

The BIA's conclusion that Pahlevi failed to establish past persecution is supported by substantial evidence in the record. Although the incidents described by Pahlevi (including the name-calling during his childhood, the two robberies of his family, and the verbal insults regarding his sexual orientation) are unfortunate, they do not rise to the level of persecution. See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (holding that an ethnic Chinese Indonesian's account of two isolated criminal acts by unknown assailants, which resulted only in the theft of some personal property and a minor injury, was not sufficiently severe to constitute persecution). See also Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir. 1993) ("persecution is an extreme concept that does not include every sort of treatment our society regards as offensive."). Moreover, the other incidents that he described were not personally directed to him, and do not demonstrate past persecution under the circumstances presented here.

Nor has Pahlevi established a well-founded fear of future persecution. Pahlevi failed to show that he would be individually singled out for persecution or that there is a pattern or practice of persecution against Chinese Christians or homosexuals. See 8 C.F.R. § 208.13(b)(2)(iii)(A). We have held that violence directed against Chinese Christians in Indonesia "does not appear to be sufficiently widespread as to constitute a pattern or practice," Lie, 396 F.3d at 537, and Pahlevi failed to adduce evidence warranting a contrary conclusion.

Finally, on appeal, Pahlevi contends that it is "clear from the administrative record that homosexuals are persecuted in Indonesia," and that the IJ and the BIA "ignored" this "fact." However, Pahlevi cites nothing in support of this bald assertion. In any event, the record in this case does not compel the conclusion that there is a systemic, pervasive, or organized persecution of homosexuals in Indonesia. See id. (discussing what constitutes a pattern or practice of persecution). Further, as the IJ noted "there is insufficient evidence of widespread targeting by -non-state actors that the government is unwilling or unable to control".

Because we conclude that Pahlevi failed to establish his eligibility for asylum, we necessarily conclude that he has not satisfied the more stringent requirements for withholding of removal. See Paripovic v. Gonzales, 418 F.3d 240, 246 (3d Cir. 2005).

For the foregoing reasons, we will deny the petition for review.